Mr. Johnson Thank you, Your Honor. May it please the Court, the three topics I'd like to address today are why the plain language of the American Events Act requires and in fact mandates the Director to institute IPR decisions, why that same plain language precludes the Board from instituting IPRs, and how the Board otherwise erred in misconstruing and not fairly accrediting our commercial success and long-felt-need evidence. As the final House report to the American Events Act makes clear, the purpose that Congress had in mind in establishing inter-parties reviews was to convert inter-parties re-examinations from examinational proceedings into adjudicative proceedings. As the House report later says in connection with the post-issuance proceedings, its goal was to have these matters heard in court-like proceedings. Now in order to do that, it was unnecessary for Congress to change the manner in which the proceedings, the re-examination proceedings, had been instituted. Re-examination proceedings had been instituted in the past based on a non-appealable, unreviewable, discretionary decision of the Director through one of her executive delegates, traditionally an examiner. There was no need to change that in order to convert the inter-parties re-examination to the inter-parties review, and Congress didn't do that. Congress continued to retain that aspect of the proceeding by giving the Director broad discretion to decide in an unreviewable context, unappealable context, the ability not only to see whether a threshold had been met, but to consider a raft of other factors that are set forth in the statute to decide whether it would be appropriate or not to institute an inter-parties review. But of course, what Congress needed to do in order to convert the examinational proceeding to an adjudicative proceeding was it needed to move the examinational part out of the executive function of the office and over to its judicial branch, if you will, its judicial  branch. So it did so by establishing the Patent Trial and Appeal Board for the first time and specifying its jurisdiction in Section 6. And what it did was, once the institution decision was made, was it said, from that point on, the Board shall have jurisdiction to conduct and decide these post-grant reviews. And that is exactly what the language of the statute does. If you look at Section 6, Section 6 says that the Patent Trial and Appeal Board shall conduct inter-parties reviews pursuant to Chapter 31. In Chapter 31, relating to these reviews, the references are replete to the Director's discretion to institute, but has only two references to the Patent Trial and Appeal Board. The first in 316A, which says that the Patent Trial and Appeal Board may conduct proceedings instituted under this chapter. And again, in Section 318, where it says, if instituted and not dismissed, the Patent Trial and Appeal Board. Can I just ask this? Suppose I thought, as I think I do at the moment, that there's no language in the statute, Section 6 in the 31 series, that is specifically restrictive in the way that you're arguing and that your argument is a kind of structural argument about what Congress contemplated the role of the 200-odd board members would be and that that role would be something different from the role that is played in the institution decision. But I do believe there's restrictive language. What language says that... I get to finish my question. Yes, of course you do. What language says that the director may not delegate the director's authority to members of the board or to panels constituting the board and even the same panel that will then decide the matter? Section 6 is jurisdictional. So it says what powers the board has. And the committee report refers to it as jurisdictional. So that the director can only delegate to the board matters within the board's jurisdiction. If the board doesn't have jurisdiction to institute, and it doesn't, but only to conduct and decide, then the director clearly cannot delegate to the board and ask the board to do something. The fact that the director can't delegate, the mere fact that some part of the agency has specific functions doesn't suggest that other functions can't be delegated to that part of the agency. I mean, what case suggests... The only source... No, you can't interrupt. You've got to let us finish the question. That's not appropriate. What case suggests that delegation is impermissible under those circumstances? Well, I believe that the Cudahy, Fleming, and Splane cases, which are cited, read together indicate that where their statute speaks to delegation, that you can't fall back on general delegation principles. Well, that seems to me to be a different argument. You're arguing that because the statute specifically provides for delegation by the director to officials appointed by him, that that precludes other kinds of delegation. I understand that argument, but that's different from saying that because the board has certain assigned functions, that other functions can't be assigned by delegation. Well, I think jurisdictional statutes are always read as being limiting in the that which is expressed excludes that which is not. And when you say the board's duties are, and when the committee report says the jurisdiction is expanded to do these duties, that that by implication means that they don't expand further. Now, if the director had independent jurisdiction, independent authority to delegate, then that would be a different story. But the only authority given to the office to conduct these types of proceedings, which are intended to invalidate patents, is given in Section 6. The director's other general authority under Section 2 is only to grant and issue patents, which is clearly not what's involved in these. So, she doesn't have a general authority to do that. She gets some authority in Section 6 as a member of the board, of course, with a few extra duties. Can I ask this? So, I think you've, I don't think I quite appreciated this, but that you're, there are kind of two possible statutory arguments you're making. One is about statutory provisions saying what the director can and can't do. And then there's statutory provisions saying what the board can and can't do. And at least the second point is an argument, which I think Judge Dyke was asking you about, about when a provision that says a particular component of an agency shall do the following, whether that is general meant to be restrictive and say, and nothing else, even if it would otherwise be implicitly authorized to receive the function. So, what I guess I want to try to return to is in the absence of specific case law providing presumptions about the restrictive nature of assignments of duties, I'm not sure why there is something inconsistent in the nature of the function, which I think you were beginning to suggest in describing the executive and the judicial function. And so, to bring this to a specific question, why is this not like what a district court does in deciding a preliminary injunction and then the merits? Well, because what the district court does in that situation is entirely a judicial function and they stay within their function. Here, we have an executive discretionary unreviewable function for institution, which is done by the director and has always been done by the director's executive delegates. And then we have a judicial function, which is the follow up, which is the second stage of the proceeding to conduct and decide these. And that's entirely a judicial function. And under the Administrative Procedure Act, one of the primary objectives is to separate Why isn't the initiation a judicial function? Because it involves investigation of factors and the complete discretion of the director. There is a long list of factors, for example, in connection with joinder that is mentioned in the legislative history, I believe it's by Senator Kyle, as to what the office had called the senator, it would look into when it was trying to decide whether to join a case. In fact, there are very broad discretion there. The director can set a limit on the number that are granted. The director is to promulgate regulations, taking into account the economy and the efficiency of the patent system and many other things. The director is also to investigate whether the same or similar arguments for prior art has already been before the office. So these are all the kinds of executive discretionary functions, activities you would expect from the director acting in her executive capacity or her delegate. Well, district judges have a lot of discretion also. Of course they do. Consistent with having discretion. Of course they do. But you keep interrupting. I'm sorry, I'm having trouble knowing when you're finished, so I'll be more respectful. Yes, they do have a lot of discretion and their settings, what they do is entirely reviewable from the start to the finish, of course, which is a different aspect between executive discretionary decisions and judicial decisions. And of course, in this context, especially as promulgated, here we have the kind of limited record. We don't have a record where the patent owner has been allowed to introduce its own evidence at the institution stage. So there is a limited record. There are limited grounds that can be raised in the institution phase. And as I've mentioned, it's entirely unreviewable. Well, ordinarily you would have a limited record in the preliminary injunction stage and a decision about likelihood of success as part of it, not perhaps statutorily or otherwise mandatorily limited, but you would ordinarily have a preliminary decision on the non-merity part of the preliminary injunction decision. I'm not arguing that judges and courts don't have discretion. In those proceedings, however, in preliminary injunctions, I believe it's required that both parties be heard, that both parties are allowed to present their evidence, that evidence is considered by the court. We don't have that here at the institution phase. Here we have a one-sided record where the patent owner is precluded from submitting like-kind evidence, and it's given to an executive acting in that capacity to make a discretionary decision, not just on that evidence, but on the basis of an investigation that can be wide-ranging and involve factors having nothing to do with a particular matter. Sorry, I'm not following this. A district judge issues a temporary restraining order, non-reviewable, essentially based on one-sided record. Yes. So what's the matter with that? Nothing's the matter with it, but there are other safeguards in that situation where the restraining order can't last very long and you have an extremely high threshold. And even in temporary restraining orders, of course, almost all courts insist that the other side be contacted, and if they appear, they will be heard. Let's hear from the other side, and we'll save you rebuttal time, Mr. Johnson. Okay, Ms. Allen, are you here representing the director? Yes, Your Honor. Okay. Thank you, Judge Newman. I may appease the court. I just want to briefly touch, there are two independent threshold reasons why Ethicon's challenge to the director's delegation of the institution decision to the court is not properly before this court. And I just want to emphasize the waiver issue because the agency has important institutional concerns regarding waiver. Ethicon didn't raise this issue at all before the agency, despite numerous opportunities to do so throughout the proceedings. And so under this court's well-established precedent, particularly the case in Ray DBC, the issue is waived. There's something troubling about the way it's evolving, which also is not just troubling, but seems to be extraordinarily inefficient if, in fact, the implementation of this system, which was designed to put the office in a position of authority and respect and reliability of a court, in most cases at least of the post-grant review, as to have initially in this one-sided step in which there's a prima facie or whatever case presented to, in theory as I had understood it, one examiner who would then cross the threshold, do a certain amount of sorting out before it came to the tribunal, which then was established with a good many of the safeguards that we see in the district court. But that this first threshold step, if taken by the same tribunal that makes the final decision, seems to be extraordinarily, if nothing else, inefficient because we're just duplicating with the same decision maker. However, with only half the record, because it's not opposed, to take a step. And aren't we losing one of the fundamental, I'll say, selling points, theories as to why it was appropriate and desirable to turn over to an administrative agency what until now only the courts could do. There would be a threshold so that there wouldn't be a lot of unnecessary thrashing around, followed by a tribunal of experts who would make the decision. When you put them all together, it is curious. We haven't really seen it in this form before. And I have to tell you, it doesn't match the way I had understood the plan, the purpose of setting up this extraordinarily elaborate jurisdictional, jurisprudential structure. I hadn't meant to make a speech, but if you can put this back in the context, because we don't want to argue about the director's right to delegate. The question is, who does the director delegate to and in what context? Sure, Your Honor, just to step back with the history of the proceeding, under the prior statute, there was inter-parties re-examination, and the director in the statute gave the director the authority to institute inter-parties re-examination and also the authority to conduct the inter-parties re-examination. And under the prior scheme, the director delegated both of those to the examiner, typically to the same examiner. When the America Invents Act came along, Congress purposely specified that the board would conduct inter-parties re-examination in order to streamline the proceedings, because what was happening under the prior regime was that an examiner would make a decision and then it would be appealed to the board. And it was taking too long and consuming too many resources, as the legislative history shows. And so Congress purposely chose to have the merits determination made by the board. But this wasn't a casual choice. This was a powerful appeal of the structure of patent decisions because 80 percent of the litigated patents were being tossed out by the courts. It looked as if there was some kind of disrepair within the office and to build this two-layered system to provide the reliability and the authority of the nation depends on its innovation. And here it looked as if it might be collapsing. Well, Your Honor, Congress did raise the standard at the threshold step so that it went from the director determining whether there was a substantial new question of patent debility to the question of whether there's a reasonable likelihood of success. And that threshold, that higher threshold, was purposely chosen to protect patent holders and to make sure that invalid challenges weren't going forward. But I just would like to turn to the delegation issue quickly just to point out that in its reply brief at page 19, that the director can delegate the institution decision to secretarial appointees. So the only question remaining on the merits of this case is whether the director can delegate to the board, which is the specialized body within the agency that specializes in claim construction and patent ability. I think there's sort of two parts to the argument. Can it delegate to the board and can it delegate to the same panel that's going to have a stronger and a weaker argument? Well, I'm not evaluating the merits. I mean, it's scope of argument. Of course. Respectfully, Your Honor, there is a lot of hand-wringing about the fact that the same panel decides both issues. But Ethicon clearly states in its reply brief at page 8 that it would not have been sufficient if the merits decision had merely been assigned to a different panel. So I think it's clear that their legal argument. But that's in the nature of stronger and weaker arguments. You don't say I'm perfectly happy with the weaker one. It would actually like to win on both arguments, where actually the stronger one would make the second one unnecessary. Well, Your Honor, if their argument is merely that it should have been assigned to a different panel. It's not merely. It's both. I'm just trying to clarify. I mean, they do have a point about the initiation decision maybe not supposed to be in the same hands as the final written decision, the merits decision. But they also have another point that the structural separation within the PTO should be even stronger than that. And board members simply should not be part of stage one. Well, Your Honor, they said that assigning it to a different panel wouldn't cure their legal challenge. And so I don't think that they're raising a straight argument about the same panel being assigned to both. And I think it points out the waiver issue here, because they clearly could have raised to the board before the merits determination that it should have been assigned to a different panel. They could have petitioned the chief administrative judge who could have done that. Can I double check one thing that was, I think, raised by Mr. Johnson? Am I right that it's not the statute, but only regulation that restricts what the patent owner can put in the preliminary response? Your Honor, there's a statutory provision that governs the preliminary response. But it doesn't say no evidence. Right. And to be clear, the regulation that he points to, which is 37 CFR section 42.107C, it allows the person responding to present evidence, just not, quote, new testimony evidence. And it specifically says except as authorized by the board. So here again, this is another situation in which Ethicon could have asked the board to present new testimony evidence if it thought it was necessary at the institution phase in order to have a fair proceeding. And they never gave the agency an opportunity to consider that argument. But to get back to the... We've exhausted your five minutes. Is there anything else that you must ask on behalf of the director? Okay. Thank you. Thank you, Ms. Allen. Ms. Daly. Thank you, Your Honors. I was actually going to turn to the obviousness question, but that wasn't raised in Mr. Johnson. So I guess I'd ask the panel if they have any questions on obviousness. I'd be happy to ask them. Or if you have more questions on the statutory authority, I can answer those or I can defer the time back to the government's counsel. Okay. Thank you. Mr. Johnson, you have the last word. Thank you. I'd like to refer back to your question. We're fixing the clock. Okay. I'd like to refer back to your question about a prohibition on the board's right to institute. The sections of the statute I referred to, Section 6, which references Chapter 31. And Chapter 31, which in both situations, both the references, references that the board must conduct itself pursuant to Chapter 31 and Section 6, limit, cabin the authority of the board. The jurisdiction is limited. There's no jurisdiction given to the board to go beyond that. Yeah, but what case says that if a subpart of the agency has certain responsibilities, other responsibilities can't be delegated to them? Well, the director has no authority with respect to that. No, you're not answering my question. What case says that if a part of an agency is assigned certain functions by statute, that other functions cannot be delegated to it? Well, there are several things under the Administrative Procedure Act, Section 554D. What case? Well, I think that the cases that underlie that would be Kelly v. Goldberg, which is cited at footnote 24 in the Withrow decision, where they discuss, in particular, limitations on any employee of an agency making a decision that reviews, in essence, the propriety of its own earlier decision. And Kelly v. Goldberg, I think, preceded. That's not the same point. Different point. Perhaps I didn't understand your question. What case says that if a subpart of the agency is assigned certain statutory functions, that it's impermissible to delegate other functions to that subpart of the agency? Well, I think that with respect to administrative law judges, whose independence is under federal statutes, as, for example, 5 U.S.C. 3105, which precludes assignment of duties to administrative law judges that are inconsistent with their responsibilities as judges. That's a special statutory provision. Yes, it is. And it recognizes the fact that when you talk to... So, are you agreeing that, in general, the fact that part of the agency has specific functions by statute doesn't preclude delegation of other functions? I believe that if the delegation... You keep interrupting. Excuse me. It does not bar the assignment of other functions. I believe that where the statutory scheme makes it clear that the official or employee to whom the responsibility would be delegated is not authorized to discharge that function, that that delegation would be improper. The example we give in our brief is it would be improper for the director to delegate to the commissioner of trademarks the examination of patent applications. But just to be clear, what we're talking about here, your argument is entirely based on the statute, right? There's no... If the statute had set up the scheme that exists now, there'd be nothing, no constitutional question raised by doing that, right? Well, there are constitutional concerns that are raised, and the canon of constitutional avoidance should be used in... If the statute had provided exactly for the way things are done now, would that statute be unconstitutional? And may I ask, when you say that, that the statute would include... Said that the board was responsible for initiating and for making the final legitimation. And the same panel? Same panel. Yes, I think that would raise some... Would it be unconstitutional? Why? Because I think that there is a concern, given the structure that we're in, the hypothetical, about having the same decision makers be involved in the first phase on limited record, making up a decision and then, in essence, reviewing the propriety of that decision in the later final merits decision. I don't know that it would be unconstitutional, but I believe that the cases are concerned about the risk, an undue risk of concern, that the decision makers may not meet the fair and unbiased requirements of the due process clause. To elaborate on that question and answer, because I think I made clear that I'm trying to think through the legislative intent, if this isn't a constitutional issue, nonetheless, it's appropriate to look at the statutory. We don't believe that this case needs to be decided on constitutional grounds. We do believe that all the normal canons of statutory construction and the legislative history, those canons, of course, include the canon of constitutional avoidance, but we don't believe that this court needs to address a constitutional question because the statute is quite clear. The statutory framework is quite clear and the intent of Congress is quite clear in how they set this up with the executive discretionary and unreviewable decision coming first from the director and uniformly through the House committee report and through the statute, the institution is clearly to be done by the director. It's then to be shifted. The government itself has argued to this court that at that point after institution, the statutory responsibility for conducting and deciding shifts to the board. And that's all the court need decide, is that that is indeed what the statute has in mind. And I would suggest it's completely consistent with decisions like the Quozo decision and others that you have already made, recognizing that this is a two-stage proceeding, recognizing the difference between the kinds of decisions that are made and why the institution decision is not appealable on its merits. I think it's I think it's completely consistent with what the court has decided thus far. Any more questions, more questions for Mr. Johnson? Thank you, Mr. Johnson. That concludes the argued cases for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.